UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN M. HANCZEWSKI,

        Plaintiff,        CIVIL ACTION NO. 10-CV-10133

vs.

                              DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.** **RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Remand (docket nos. 12, 15) be GRANTED, Defendant's Motion For Summary Judgment (docket no. 14) be DENIED and the instant case remanded pursuant to sentence six of 42 U.S.C. § 405(g).

\*\*\*

**II.** **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income with a protective filing date of September 5, 2007 alleging that she had been disabled since August 21, 2007 due to a stroke, osteoporosis, back problems and depression. (TR 96, 100, 114, 119). The Social Security Administration denied benefits. (TR 54-63). Administrative Law Judge John J. Rabaut (ALJ) held a de novo hearing on March 23, 2009 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time from August 21, 2007 through the date of the ALJ's

August 10, 2009 decision. (TR 9, 18-20). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3). Plaintiff filed a Motion for Remand wherein the issue is whether Plaintiff has shown cause to remand pursuant to sentence six of 42 U.S.C. § 405(g) to consider additional evidence and Defendant filed a Motion for Summary Judgment wherein the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.  Plaintiff's Testimony

Plaintiff was 50 years old at the alleged time of onset of disability. (TR 23, 114). Plaintiff has a high school education and two years of college. (TR 23). Plaintiff lives in a two-story house with her son and sleeps upstairs. (TR 30). Plaintiff claims disability as of August 21, 2007, the date on which she allegedly suffered a mini-stroke for which she was hospitalized. (TR 24). Plaintiff has past work as a shift manager for a self-serve gas station, a cashier, a telemarketer, a dental assistant and a receptionist. (TR 25).

Plaintiff testified that her arthritic hands hurt, swell and "click," she has pain in her right wrist, she cannot open jars and writing is difficult. (TR 26). Plaintiff described back pain with constant muscle spasms. (TR 26). On a scale of ten, her back pain is usually a seven or eight. (TR 27). Plaintiff lies down about once a day for up to an hour and a half for her back pain. (TR 44).

She described her depression which causes crying and sleepless night and she gets "extremely nervous" being around people. (TR 26, 43). She testified that she only takes nine of her medications instead of all of them because they make her extremely drowsy. (TR 26). They also make her nauseous and dizzy. (TR 28). She takes Cymbalta, Wellbutrin, Xanax, Neurontin,

Flexeril, Ultram, Zantac and Tylenol. (TR 28). She takes Boniva for osteoporosis and osteopenia, which resulted from her Lymphoma chemotherapy treatments. (TR 43, 45).

Plaintiff has a driver's license and drives. (TR 30). She is able to take care of her own personal hygiene and dressing. (TR 32). Plaintiff performs some household chores including loading the dishwasher and dusting and she shares the cooking responsibilities with her son. (TR 31). During the day she rests, watches television and uses the computer. She rents movies and is able to follow the plot in a movie. (TR 32, 34, 38). About once a month Plaintiff likes to mend clothes for herself and her son and she attends church weekly and visits her parents. (TR 33-34, 40).

Plaintiff testified that she can stand for five minutes at a time, walk about six blocks and lift "a couple of pounds." (TR 36). Her right-hand grip is worse than her left. (TR 36). She shops with her son, who helps her lift items. (TR 41). On September 17, 2007 the administrative interviewer observed that Plaintiff appeared to have difficulty sitting and walking and "looked like she was in pain during the interview" and "walks very slowly and . . . looks very tired." (TR 116).

### B.     Medical Evidence
### 1.     Treatment for Physical Impairments

The Court has reviewed in full the records in this matter. Plaintiff underwent chemotherapy in July 1994 for low grade lymphoma, now in remission. (TR 173). Regular bone density testing reveals that Plaintiff has mineral density of the left hip within the range of osteopenia and of the lumbar spine within the range of osteoporosis. (TR 189, 244, 314, 431). Plaintiff was prescribed Boniva for lumbar spine osteoporosis. (TR 173).

On August 21, 2007 Plaintiff had complaints of dizziness and left arm numbness. (TR 184, 197-201). A CT of the brain revealed bilateral basal ganglia calcification. (TR 184). MRIs of the brain and an MRA of the neck revealed no specific or significant findings. (TR 185). An

echocardiogram was normal. (TR 195-96). X-rays of the chest were normal, with no acute chest abnormality. (TR 183). Plaintiff was diagnosed with transient ischemic attack and bilateral prominent basil ganglia calcified lesion. (TR 203-06). Following Plaintiff's December 2007 complaint of chest pain, chest x-rays and EKG were normal. (TR 301-11).

Plaintiff has a history of complaints of low back pain. The record shows she reported low back pain in January 2007 after lifting boxes weighing approximately forty pounds. At that time, Plaintiff was taking Wellbutrin XL and Boniva. (TR 217). Plaintiff reported constant back pain in June 2007 and on two occasions in September 2007 for which the treating physician reported paraspinal spasm on the right from T3-L4. (TR 231-32, 390-91). Naprosen was discontinued and Lodine, Flexeril and Prilosec were prescribed. (TR 231). September 28, 2007 x-rays revealed mild spondyloarthrosis of the lumbar spine and diffuse mild spondyloarthrosis of the thoracic spine. (TR 245, 320). Plaintiff attended physical therapy in August and September 2008 and reported no decrease in pain following therapy. (TR 277-98). Plaintiff continued to report chronic, moderately severe back pain in October 2007. (TR 230, 383). Other complaints of chronic back pain were made on June 5, 2007 and July 9, 2007. (TR 234, 236). Plaintiff continued to complain of "arthritis" pain, back pain and/or hand pain in August (lumbar spine with trigger point pain), September (knee pain) and December 2008 and January and March 2009. (TR 375-76, 416, 418, 422-23). March 2009 x-rays of the right hand showed osteoarthritic changes "involving the distal interphalangeal joint of the right little finger" and no other significant abnormalities. (TR 438). Plaintiff complained of right knee pain in October 2008 and x-rays were "unremarkable." (TR 413).

On January 8, 2008 medical consultant Jeffry Forsythe completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff can lift and/or carry up to a maximum of twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an

eight-hour workday, sit about six hours in an eight-hour workday and is unlimited in the ability to push and/or pull. (TR 265-72). Plaintiff must never climb ladders, ropes or scaffolds and may perform all other postural activities frequently at most. (TR 267).

Family medical practitioner Michael Williams, D.O., completed a Medical Examination Report dated August 4, 2008 and in which he opined that Plaintiff's "chronic lumbar spinal pain with associated paraspinal muscle spasm" results in limitations to lifting and/or carrying less than ten pounds frequently and ten pounds occasionally, standing and/or walking less than two hours of an eight-hour day and sitting less than six hours of an eight-hour day, with no limitation on repetitive action with the upper or lower extremities. (TR 273-74). Plaintiff's medications at that time were Lodine, Ultram, Wellbutrin, Prilosec and Flexeril. (TR 274). The August 2008 opinion was more restrictive as to weight and less restrictive as to sitting than Dr. William's January 10, 2008 Medical Examination Report. (TR 275-76).

**2.     Treatment for Mental Impairments**

Plaintiff complained of depression and anxiety in March 2007. (TR 238). The doctor noted Plaintiff's report that Wellbutrin had worked very well for her in the past. (TR 238, 239). Plaintiff underwent an assessment on October 5, 2007 with a therapist (L.M.S.W.) for her reported depression and lethargy. (TR 219-26). The therapist noted Plaintiff's history of alcohol use which ended with treatment in 2004. (TR 222-24). The therapist diagnosed Major Depression Recurrent (296.32) and assigned a current GAF of 50. (TR 226). On November 8, 2007 the therapist noted Plaintiff's report that she attends a 12-step group weekly for her alcohol addiction and recovery. (TR 228). On November 14, 2007 Kishore Kondapaneni, M.D. performed a Comprehensive Psychiatric Evaluation and diagnosed Major Depression and a history of alcohol dependency in remission and assigned a GAF of 60. (TR 350-52).

Medical consultant Ron Marshall, Ph.D., completed a Mental Residual Functional Capacity Assessment on January 1, 2008, diagnosed moderate Major Depressive Disorder, recurrent, and concluded that Plaintiff has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. (TR 247-64).

On September 23, 2008 Plaintiff underwent a learning disability evaluation and clinical psychological study with Thomas L. Seibert, M.S. (TR 353-73). Plaintiff's performance on the Wechsler Adult Intelligence Scale-IV showed her functioning "in the normal/average range of intellectual ability" and she displayed "only a border line ability to retain information to which she has been exposed." (TR 358).

In August and September 2008 Plaintiff attended therapy and was diagnosed with Major Depression Recurrent with Generalized Anxiety Disorder and assigned a GAF of 55. (TR 329-49). In November 2008 her therapist and Dr. Kondapaneni completed a Mental Residual Functional Capacity Assessment and concluded that "[d]epression and anxiety impair client's abilities to work under stress." (TR 411-12). The "mental" assessment also assigns exertional limitations on lifting, standing and sitting. (TR 412). Plaintiff attended regular monthly therapy sessions from October 2008 through March, 2009 with occasional sessions prior to that. (TR 440-63)

### C. Vocational Expert

The ALJ asked the VE to consider an individual able to perform light exertion work with no climbing ladders, ropes or scaffolds, only occasional climbing ramps or stairs, only occasional crouching and kneeling, no crawling, needing to avoid concentrated exposure to extremes of hot and cold, avoid moderate exposure to excessive vibration, moderate use of moving machinery and all

exposure to unprotected heights and further limited to performing only low-stress jobs, defined as requiring only occasional decision-making and occasional changes in work setting. (TR 48). The VE testified that such an individual could perform Plaintiff's past work as a cashier, telemarketer and receptionist, all at the sedentary level. (TR 48). The skilled positions of shift manager and dental assistant could not be performed due to the limitation to a low-stress environment, which would place the jobs at the unskilled level. (TR 49).

The ALJ added the additional limitation to only occasional fingering and occasional interaction with the public. (TR 49). The VE testified that these limitations would eliminate the cashier, receptionist and telemarketer positions, which require more than occasional fingering and require dealing with the public. (TR 49). The ALJ asked the VE to consider an individual of Plaintiff's age, education, work experience and skill-set with the aforementioned limitations. (TR 49). The VE testified that such an individual could perform light work as a visual inspector (2,000 jobs in the region), security guard (3,500 jobs), inspector (reduced to 3,800 jobs due to occasional fingering limitation). (TR 49, 51). The VE defined the region as the lower peninsula of the state of Michigan. (TR 48). The ALJ went on to ask hypothetical questions about sedentary level exertion. (TR 50-51). The VE testified that if an individual needed to lie down for at least 45 minutes per day it would not be work-preclusive if it were allowed during the lunch hour but it would be work-preclusive if it occurred on an as-needed, rather than scheduled, basis. (TR 52).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff meets the insured status requirements through June 30, 2010, had not engaged in substantial gainful activity since August 21, 2007, the alleged onset date, and suffers from osteoporosis, degenerative joint disease in her hands, major depressive disorder and anxiety, she does not have an impairment or combination of impairments that meets

or equals the Listing of Impairments. (TR 11-14). The ALJ found that Plaintiff had the residual functional capacity to perform light exertional work further limited to no climbing ladders, ropes or scaffolds, no crawling, occasional kneeling, occasional fingering (described as fine manipulations of items no smaller than the size of a paper clip), avoid concentrated exposure to extreme heat and cold, avoid moderate exposure to excessive vibration, avoid moderate use of moving machinery, avoid exposure to unprotected heights and limited to low stress jobs (defined as those requiring only occasional decision making, only occasional changes in work setting and only occasional interaction with the public). (TR 15). The ALJ found that Plaintiff is not able to perform her past relevant work yet she is able to perform a significant number of jobs in the economy and therefore she is not suffering from a disability under the Social Security Act. (TR 17-18).

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform

9

specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff asks that the case be remanded for consideration of new evidence pursuant to 42 U.S.C. § 405(g).

### C. Analysis: Whether the December 21, 2009 Examination Notes Are New Evidence Requiring Remand Pursuant To Sentence Six of 42 U.S.C. § 405(g)

Plaintiff argues that the Court should remand her claim for a new hearing based on a December 21, 2009 diagnosis of fibromyalgia with positive testing of 18 of 18 tender points. (Docket no. 12-2). Plaintiff argues that the new medical evidence involves a diagnosis that in all likelihood would be considered a "severe" impairment that would more than minimally effect her ability to do work-related activities and supports her allegations of symptoms of extreme pain and fatigue. (Docket no. 12 at 4).

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'ty of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S.

10

at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material")(emphasis added)(citations omitted). Therefore, the Court may not review this evidence except to determine whether the case should be remanded for consideration of the additional evidence. The evidence must be new and material and it must relate to the period on or before the date of the ALJ's hearing decision.

The evidence at issue is a single page Office Progress Note dated December 21, 2009 and signed by Dr. Anderson at Family Child & Health Clinic, where Plaintiff has a treatment history. (Docket no. 12-2). Dr. Anderson noted, "Test performed for fibromyalgia tender points. Results: 18 of 18 are positive. Pt [patient] exhibited significant pain response with palpation of the tender points and only the tender points although many areas pressed near & distant to the points related to [a positive] diagnosis of fibromyalgia." (Docket no. 12-2). The doctor reported a "new diagnosis" of fibromyalgia.

11

This evidence is new because the record contains no other diagnosis of fibromyalgia with positive trigger points. Plaintiff has shown good cause for failing to incorporate this evidence in the record before the ALJ where the evidence was not in existence prior to the ALJ's decision despite Plaintiff's continued treatment during the relevant period. By way of further explanation her failure to timely incorporate this evidence, Plaintiff cites *Preston v. Sec'ty of Health and Human Servs.*, 854 F.2d 815 (6th Cir. 1988) which pointed out that fibrositis (later fibromyalgia) is "[u]nlike most diseases that can be confirmed or diagnosed by objective medical tests," and "[i]t is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients." *Preston*, 854 F.2d at 818-19.

Defendant does not argue that the evidence is not new or that Plaintiff has not shown good cause for the failure to incorporate the evidence before the ALJ. Instead, Defendant argues that the evidence is not material because it does not pertain to the relevant time period and there is no reasonable probability that the report would change the ALJ's decision. (Docket no. 14 p. 11).

Defendant argues that "[n]othing in this report dates this diagnosis or the findings upon which it was based back to any time prior to the ALJ's August 10, 2009 decision." (Docket no. 14 p. 11). On its face, however, the new evidence supports Plaintiff's allegation that the diagnosis of fibromyalgia relates to the relevant time period before the date of the ALJ's August 10, 2009 decision. Dr. Anderson noted that Plaintiff's reason for the December 21, 2009 examination was neck and back pain and noted that Plaintiff had complaints of "arthritis but has had ongoing diffuse pain in axial skeleton for about 1 yr." (Docket no. 12-2). This is evidence that Plaintiff's complaints and pain symptoms precipitating Dr. Anderson's trigger point testing and the resulting diagnosis had a history of one year and pre-dated the ALJ's decision. (Docket no. 12-2). This is consistent with Plaintiff's allegations in her Motion to Remand that "the symptoms were present long before the

12

diagnosis." (Docket no. 12 p. 4). Plaintiff cited specific instances in the record, from October 2007 through the date of the hearing when she complained of chronic, severe and recurring pain, including in her back, knees, hands and wrists. (TR 26-28, 230, 232, 283, 279, 375). These and other instances of pain complaints and the resulting treatment are identified in the summary of medical evidence, above.

Finally, the evidence is material. There is a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's claim had he had this new evidence. The ALJ discounted Dr. Kondapeneni's assessment that Plaintiff could not perform at a consistent pace without an unreasonable number and length of rest periods and cannot lift anything over 5-10 pounds and rejected Dr. William's opinion regarding Plaintiff's functional abilities because "they are not supported by the objective findings and appear to be based entirely on the claimant's subjective complaints." (TR 17, 273-74, 411). Either of these opinions support a finding of sedentary exertion rather than light exertion[1] and may support the allegation that Plaintiff would need an unreasonable number and length of rest periods, which would have changed the hypothetical question to the VE and the findings at step five of the sequential evaluation.

The ALJ also concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work also includes jobs with very little weight lifted, if the job "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, legers, and small tools." 20 C.F.R. § 404.1567(a).

with the RFC. (TR 16). In discounting Plaintiff's credibility, the ALJ pointed out that "[c]linical and laboratory findings have been mostly negative, and any abnormalities have been only mild or minimal." (TR 16). The ALJ also noted that "[e]xamining physicians do not report claimant exhibited any overt signs of pain." The new evidence is inconsistent with this finding. There is a reasonable probability that the ALJ would have reached a different disposition of the claim with the new evidence.

The diagnosis of fibromyalgia is a medically determinable impairment and the objective pressure point test would have provided support for both the more severe limitations set forth in the two opinions (consistent with each other) which the ALJ discounted and Plaintiff's testimony regarding the severity of her symptoms and corresponding limitations. *See* SSR 99-2p, 1999 WL 271569 (S.S.A.) ("There is considerable overlap of symptoms between CFS and Fibromyalgia Syndrome (FMS), but individuals with CFS who have tender points have a medically determinable impairment. Individuals *with impairments that fulfill the American College of Rheumatology criteria for FMS (which includes a minimum number of tender points*) may also fulfill the criteria for CFS. However, individuals with CFS who do not have the specified number of tender points to establish FMS, will still be found to have a medically determinable impairment." *Id.* at n.3 (emphasis added)); *Soden v. Comm'r of Soc. Sec.*, 2009 WL 3188469 (S.D. Ohio 2009) (noting that existing Sixth Circuit case law recognizes "that fibromyalgia is not the type of medical condition that can be confirmed by objective testing, giving that fibromyalgia patients often present no objectively alarming signs," and "[t]enderness upon palpation on 11 of 18 focal points, as well as the joint edema . . . constitutes objective findings, to the extent that there are any such available with a diagnosis of fibromyalgia." *Id.* at *3).

14

This case should be remanded for consideration of the new evidence and further proceedings consistent with this opinion pursuant to sentence six of 42 U.S.C. § 405(g).  Because a sentence six remand is warranted, the Court denies Defendant's motion for summary judgment pursuant to sentence four of 42 U.S.C. § 405(g).  *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (Under a remand by sentence six of section 405(g), "[t]he district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination.  Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."); *see also Isaac v. Astrue*, 2008 WL 471534 at *6 (S.D. Ohio Feb. 14, 2008) (remanding under sentence six, therefore declining to address claimant's sentence four arguments).

## VI.    CONCLUSION

The Court should find that there is good cause for remand pursuant to sentence six of 42 U.S.C. § 405(g) and Plaintiff's Motion for Remand (docket no. 12) should be GRANTED and the case should be remanded for consideration of new and material evidence presented by Plaintiff. Defendant's Motion for Summary Judgment should be DENIED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not

preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 21, 2011            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 21, 2011            s/ Lisa C. Bartlett
                                   Case Manager